**In the Matter of Thactus Carl CAIN, a Minor.**

No. 5059.

Court of Civil Appeals of Texas.

Beaumont.

April 14, 1955.

S. Stanford Pitts, Conroe, for appellant.

J. Robert Liles, Conroe, for appellee.

WALKER, Justice.

This appeal is from a judgment which declared a negro boy, Thactus Carl Cain, a dependent and neglected child. Temporary custody of the child was awarded to the paternal grandfather, but the mother was given certain privileges, including that of visitation. From this judgment the mother has appealed.

The only error assigned is that the judgment is not supported by the testimony, and the question made is whether there is evidence that the child was dependent or neglected within the meaning of Art. 2330, V.A.T.S. The evidence pertaining to this matter is in conflict; but the cause was tried to the court and no findings of fact were made and it is, therefore, not necessary to consider that part of the conflicting evidence which supports appellant's contentions because all questions of fact have been resolved against the appellant, in support of the judgment. Considering, then, only evidence which supports the judgment, there was evidence of the following facts.

Since the child was born, all of the parties involved in this controversy, that is, the

mother, the paternal grandparents and the maternal grandparents have lived in the same town and until the present controversy arose were on good terms. The homes of the grandparents were less than a block apart, and the grandparents visited one another. During most of this period the mother of the child resided with her parents, but for awhile she had had a home of her own. She was residing again with her parents when the cause was tried.

The child was three years old at the time of the trial. He had been born out of wedlock, and his mother was very young, probably less than 20 years of age, at the time of his birth. When the child was about 5 months old, he came into the possession of the paternal grandparents (really mother and stepfather of the child's father) with at least the knowledge and consent of the child's mother, and the paternal grandparents, from that time until the present controversy arose, have had possession of the child and have cared for and reared the child at their own expense, all with the knowledge and consent of the child's mother and, for that matter, with the knowledge and consent of the child's maternal grandparents. According to the testimony of the paternal grandmother, the child was in need of care when she and her husband first began to attend to him, and there is some testimony by her husband which supports this. The child had required the attention of a physician 18 times and the paternal grandparents had procured and had paid for this medical care. The mother had known of these illnesses of her child, but she had not offered to pay anything toward the cost of this care. She had, however, according to the maternal grandmother, taken the child to a hospital for some treatment on one occasion and had paid for that. No material contribution toward the support of the child was made by the mother after the paternal grandparents had received the child, but the mother had made him some gifts of clothing, and on occasion she had had the child with her for a part of a day and a few times had had him with her for a longer time. The paternal grandmother said that she had sometimes left the child with the mother or with the maternal grandmother when she, herself, had had to work, and that the child had been returned to her when she finished work. The paternal grandfather testified: "I told you that baby hadn't stayed with (its mother) ten days in the last two years. But before the baby was a year old it might stay two nights with (its mother)." The child's stay with its mother or maternal grandmother on these occasions was temporary and never involved or implied a surrender of possession by the paternal grandparents.

The maternal grandparents did not object, before the controversy arose, to the paternal grandparents having the possession and charge of the child, and they contributed nothing to his support, although they could have done so. It does not appear, however, that it was a lack of their assistance which caused the mother to leave the child in the possession of the paternal grandparents. The mother, too, at times has been employed. The paternal grandmother said that the child's mother had worked at the theater for a long time and she referred to some other employments, and it would seem that the child's mother could have made a greater contribution to the child's support during these times of employment had she wished to do so.

The mother seems on occasion to have manifested a desire to have the child with her, but this interest was fitful and temporary. At these times she was under the stress of some emotion, and after a short while, two or three days, she would cease to want the child; and on some of these occasions her parents had warned the paternal grandparents of her state of mind and had also sometimes advised their daughter to let the paternal grandparents have the child.

The child's mother married one Lonnie Mills in November, 1952. He was confined in the penitentiary in June, 1953, and was still confined there when this cause was tried. It is to be noted that the period of this marriage fell during the period when the paternal grandparents had the child in their custody.

One child, a boy was born to the marriage of Lonnie Mills and the mother of the child now in controversy, and the paternal grandparents had also been caring for this baby, at least in part. The paternal grandfather said: "Ever since Lonnie has been gone, he's (this son of Lonnie and appellant) been staying at my house, too, off and on pretty regular." And the paternal grandmother said of this child that after the father went to the penitentiary, he was living with his mother "and then it started staying with me, too. Q. Both children started staying with you? A. Yes, sir." The son of Lonnie Mills was not with the paternal grandmother when the cause was tried.

As we have stated, the mother of the child was living with her parents when this cause was tried and was unemployed at that time. Her father professed to be willing and able to care for the child, but circumstances summarized above indicate that he had no interest in the child and could not be depended upon to rear the child properly.

It seems to us that the trial court, from circumstances we have summarized, could have found that the care which had been provided by the paternal grandparents was not furnished by the mother through deputy but that, instead, the paternal grandparents had acted independently, motivated by a desire to help the child, and further, that the course followed by the child's mother and by her own parents had not been dictated by necessity.

In addition to all of these matters, the mother, according to the paternal grandfather, had been guilty of certain acts of improper conduct since the child's birth which the trial court was authorized to treat as being more than simple indiscretions.

Having said all of this, it may also be said in behalf of the child's mother and of her parents that there is evidence to the contrary of that just summarized concerning her own and her parents' willingness and fitness to care for the child, the care and attention given the child by the paternal grandparents, the mother, and her own parents, and concerning other matters material to the trial court's judgment, but, as we have stated, all issues of fact have been resolved against appellant and so the evidence in appellant's behalf will not be stated.

The fitness of the paternal grandfather to have the custody of the child, subject to the trial court's order, is not in issue; but there was evidence that he and his wife had no other small children to rear and that they were fit and proper persons to have this custody which, after all, under the facts impliedly found by the trial court, they have had since the child was five months old.

It is provided by Art. 2330, V.A. T.S., that a child "who has not proper parental care or guardianship" is a dependent or neglected child, and the facts summarized above show what kind of parental care the child has had and thus indicate what kind he will have if the custody of him is changed. According to these facts, the child in controversy has not had, and the trial court was authorized to conclude that he probably will not have proper parental care or guardianship, and that for care and rearing the child is dependent upon others. Appellant's points of error are overruled and the judgment of the trial court is affirmed.

It seems to us that the trial court's judgment has actually given the mother most of the privileges concerning the child which, under the facts impliedly found, she has exercised since the child was five months old. But the parties will bear in mind that the trial court has power to make further orders concerning the care and custody of this child while the child continues to be dependent or neglected and can increase the mother's privileges if circumstances warrant these. See for example, Arts. 2335, 2336, and 2337, V.A.T.S.